IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RAKISH COTTON, FA-3334, )
    Petitioner, )
     )
    v. ) Civil Action No. 08-1250
     )
BRIAN COLEMAN, et al., )
    Respondents. )

Report and Recommendation

I. Recommendation:

It is respectfully recommended that the petition of Rakish Cotton for a writ of habeas corpus be dismissed, and that because no reasonable jurists could conclude that a basis for appeal exists, that a certificate of appealability be denied, and that judgment be entered accordingly.

II. Report:

Rakish Cotton, an inmate at the State Correctional Institution at Fayette, has presented a petition for a writ of habeas corpus which he has been granted leave to prosecute in forma pauperis.

Cotton is presently serving a life sentence and a consecutive ten to twenty year sentence imposed following his conviction, by a jury, of second degree murder, robbery, robbery of a motor vehicle and criminal conspiracy at Nos. CC 200102484, CC 200102965 and CC 200112802 in the Court of Common Pleas of Allegheny County, Pennsylvania.[1] This sentence

---

[1] The petitioner also entered a guilty plea at No. CC 200112802 which charged controlled substance violations, and completed a Guilty Plea Explanation of Rights form (Exhibit 11 to the

1

was imposed on June 12, 2002.[2]

An appeal was taken to the Superior Court in which the issue presented was:

Should Rakish Cotton's purported confession have been suppressed in that it was taken by police while Mr. Cotton was recuperating and heavily medicated from life-threatening injuries so that the statement and any waiver of rights was not knowing, voluntary and intelligent?[3]

On April 6, 2005, the judgment of sentence was affirmed.[4]

A petition for allowance of appeal to the Pennsylvania Supreme Court was filed in which this same issue was raised as the basis for relief.[5] On August 25, 2005, leave to appeal was denied.[6]

On May 10, 2006, Cotton filed a post-conviction petition.[7] That petition was dismissed, without a hearing, on October 6, 2006.[8] Cotton then filed a pro-se notice of appeal raising the following issues:

A. Was appellant denied the effective assistance of counsel where trial counsel did not call an expert witness to rebut non-expert testimony pertaining to the defendant's state of mind at the time a pre-arrest statement was given to the police?

---

answer of the Commonwealth) pursuant to a plea agreement that no further penalty be imposed on this charge.

[2] See: Petition at ¶¶ 1-7.

[3] See: Exhibit 17 to the answer of the Commonwealth.

[4] See: Exhibit 19 to the answer of the Commonwealth.

[5] See: Exhibit 21 to the answer of the Commonwealth.

[6] See: Exhibit 22 to the answer of the Commonwealth.

[7] See: Exhibit 23 to the answer of the Commonwealth.

[8] See: Exhibit 27 to the answer of the Commonwealth.

B. Was appellant denied the effective assistance of trial counsel where counsel failed to call Gary Stevenson depriving Appellant of his 6th Amendment right to confront his accuser and to rebut the Commonwealth's theory of the case?[9]

On April 16, 2008, the denial of post-conviction relief was affirmed.[10] Leave to appeal was denied by the Pennsylvania Supreme Court on August 14, 2008.[11]

The instant petition was executed on August 19, 2008, and in it Cotton contends he is entitled to relief on the following grounds:

I. Petitioner was denied his Fifth Amendment right to not be compelled as a witness against himself and his Fourteenth Amendment rights to due process and equal protection under the law [regarding the circumstances under which his confession was obtained].

II. Petitioner's confession should have been suppressed [on grounds of involuntariness].

III. The improper admission as expert testimony from a former detective as to the petitioner's level of pain and medication induced state of mind as expert opinion [regarding the circumstances under which he confessed].

IV. Petitioner was denied the effective assistance of counsel when counsel failed to call an expert witness about the petitioner's medical/mental condition at the time he confessed to the crime.

V. Petitioner was denied the effective assistance of counsel when trial counsel failed to call as a witness the petitioner's co-defendant who had implicated the petitioner to the police which ultimately led to the petitioner's arrest and confession.

It is provided in 28 U.S.C. §2254(b) that:

An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that

---

[9] See: Exhibit 32 to the answer of the Commonwealth.

[10] See: Exhibit 35 to the answer of the Commonwealth.

[11] See: Exhibit 37 to the answer of the Commonwealth.

3

the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

This statute represents a codification of the well-established concept which requires that before a federal court will review any allegations raised by a state prisoner, those allegations must first be presented to that state's highest court for consideration. Preiser v. Rodriguez, 411 U.S. 475 (1973); Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484 (1973); Doctor v. Walters, 96 F.3d 675 (3d Cir. 1996).

It is only when a petitioner has demonstrated that the available corrective process would be ineffective or futile that the exhaustion requirement will not be imposed. Preiser v. Rodriguez, supra.; Walker v. Vaughn, 53 F.3d 609 (3d Cir. 1995).

If it appears that there are available state court remedies, the court must determine whether a procedural default has occurred. If a procedural default has occurred, the court must determine whether cause or prejudice exists for the default, or whether a fundamental miscarriage of justice would result from a failure to consider the claims. Carter v. Vaughn, 62 F.3d 591 (3d Cir. 1995).

In construing § 2254(d)(1), the Court in Williams v. Taylor, 529 U.S. 362, 412-413 (2000) stated:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable

application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

In Hameen v. Delaware, 212 F.3d 226, 235 (3d Cir. 2000), the Court determined:

The Court in Williams v. Taylor held that "[u]nder the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." Williams v. Taylor, further held that "[u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." The "unreasonable application" inquiry requires the habeas court to "ask whether the state court's application of clearly established federal law was objectively unreasonable." Thus, under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." The Court in Williams v. Taylor made it clear that the "contrary to" and "unreasonable application"clauses have independent meaning.

In the instant case, it is clear that the petitioner presented his first and second issues regarding the voluntariness of his confession to the appellate courts of the Commonwealth in his direct appeal. While it would appear that the petitioner sought to raise his third, fourth and fifth issues in his appeal from the denial of post-conviction relief, the Superior Court observed that while the petitioner was seeking to raise the issues of the denial of the effective assistance of counsel in that court he had,

> failed to preserve the issues both in his PCRA petition and in a Rule 1925(a) concise statement of matters complained of an appeal. See Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal").[12]

In Coleman v.Thompson, 501 U.S. 722,750 (1991), the Court held:

---

[12] See: Exhibit 35 to the answer of the Commonwealth at p.7.

In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice.

No basis for waiving this procedural default is demonstrated and as a result, his third, fourth and fifth issues are barred from consideration here.

The background to this conviction is set forth in the Memorandum of the Superior Court:

On December 19, 2000, Heath Roberson was shot and killed during the robbery of his automobile in the City of Pittsburgh, Allegheny County, Pennsylvania. Appellant agreed to accompany investigating detectives to the police station for questioning concerning the homicide on February 1, 2001. While at the police station, Appellant was informed that he was being placed under arrest for the robbery and shooting death of Heath Roberson. The detectives informed Appellant of his rights, and he signed a waiver of rights form and agreed to answer questions. Appellant initially denied any knowledge of the shooting, but he later admitted to robbing and killing the victim [with co-conspirator, Gary Stevenson]. A detective wrote down Appellant's statements in separate columns on a piece of paper, and Appellant subsequently signed his name at the bottom of each column...

The record reflects that Appellant had been shot in the weeks prior to his confession, and that at the time of his statement to police, he was taking Oxycontin. However, the record further reflects that Appellant stated that he ingested the Oxycontin approximately 15 hours before he gave his statement. Additionally, the detectives who interviewed Appellant testified that Appellant did not appear to be under the influence of drugs or alcohol. And while Appellant informed the detectives that he was on medication, when he was asked if he felt the effects of the medication, Appellant responded that he understood everything that was going on. Based on these facts, the trial court found that Appellant's waiver of his rights and the statements made to police officers were knowingly and voluntarily given.[13]

Thus, the two issues which the petitioner seeks to raise here, and which he did raise in his direct appeal, concern the voluntary nature of his confession.

---

[13] See: exhibit 35 at pp.1-2.

A suppression hearing was conducted on March 11, 2002. At that hearing Detective Richard McDonald testified that on February 1, 2001, he was working with the Pittsburgh homicide unit (SH. 4)[14]; that the petitioner had been shot several weeks earlier by Stevenson (SH.7, 31); that the petitioner agreed to proceed to the police station where he was informed that he was under arrest for the Roberson homicide (SH.8,9); that the petitioner appeared to understand what was occurring, acknowledged that he understood and was advised of his Constitutional rights (SH.8-11); that the petitioner did not appear to be under the influence of drugs or alcohol (SH.11, 20, 40); that the petitioner agreed to speak to the police officers (SH.12); that he described the homicide in very specific and vivid detail (SH.12, 23); that he did not indicate that he was experiencing any pain, and did not request that the interview be terminated (SH.13, 15, 48); that petitioner read and approved McDonald's notes of the interview and signed them (SH.16, 17); that the petitioner stated that he had taken pain medication the previous evening and that the medication had no effect on his understanding (SH.19, 48) and that he described how he and Stevenson made plans to rob Roberson, determined how to execute the robbery and also discussed the shooting (SH. 24-30).

Petitioner's uncle and sister testified that following his being shot, the petitioner was in no condition to make a statement to the police (SH.60-62, 73).

The petitioner testified that he was shot nine times on January 12, 2001 by Gary Stevenson (SH.80); that when he was released from the hospital he was in pain, his lung had collapsed, he had a cast on his left arm and right wrist and had a huge abdominal incision

---

[14] Record references marked "SH___" refer to the transcript of the March 11, 2002 suppression hearing held in the Court of Common Pleas.

(SH.82-84); that he was taking Oxycodone and Oxycontin (SH.84); that the medication caused him to experience drowsiness (SH.86); that he had last taken the medication fifteen minutes before the police arrived at his house (SH. 90-91); that when he was at the police station, he was in considerable pain; that he signed a lot of papers and never read the notes of his statement (SH. 92, 94, 95), and that he did not rob Roberson (SH.97).

In Fahy v. Horn, 516 F.3d 169, 194 (3d Cir.2008), the Court set forth the applicable federal standards that must be applied in determining the voluntariness of a confession:

> First, the relinquishment of the right [to remain silent] must have been voluntarily in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only, if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.
>
> Moran v. Turbine, 475 U.S. 412 (1986). The ultimate question in the voluntariness calculus is "whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution." Miller v. Fenton, 474 U.S. 104 (1985).

It is against this requirement that the voluntariness of the petitioner's confession needs to be gauged.

Following the Suppression Hearing, the trial court concluded:

Cotton's second complaint contends that this Court erred when it denied defendant's motion to suppress his statement and physical evidence. Defendant's third assertion of error contends that any statement made by him was not voluntary, knowing or intelligent and was in violation of Miranda. A review of the suppression transcript belies these two contentions, which will be jointly addressed. As noted in the recitation of facts, McDonald testified concerning Cotton's condition at the time that he made his inculpatory statement. The record amply supports the finding that Cotton's statement was knowingly, voluntarily

8

and intelligently made. Cotton directly and explicitly waived his Miranda rights. While Cotton obviously suffered physical difficulties at the time he was interviewed, these difficulties certainly did not preclude him from knowingly, voluntarily and intelligently waiving his rights in making a statement to the detectives. This Court's finding that Cotton's statement was voluntarily made is amply supported by the record of the suppression hearing. Cotton's second and third assertions of error must fail.[15]

In a similar manner, the Superior Court also concluded:

While it is undisputed that Appellant had suffered some injury prior to speaking to the detective, the suppression Court determined that any pain killers Appellant ingested did not detract from the voluntary nature of his statements.

The record reflects that Appellant had been shot in the weeks prior to his confession, and that at the time of his statement to police, he was taking Oxycontin. However, the record further reflects that Appellant stated that he ingested the Oxycontin approximately 15 hours before he gave his statement. Additionally, the detective who interviewed Appellant testified that Appellant informed the detectives that he was on medication, when he was asked if he felt the effects of the medication, Appellant responded that he understood everything that was going on.. Based on these facts, the trial court found that Appellant's waiver of his rights and the statements made to police officers were knowingly and voluntarily given.[16]

Under the requirements imposed by AEDPA, the burden is on the petitioner to demonstrate that the resolution of his involuntariness claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States..." 28 U.S.C. 2254(d). Clearly this is not the case. Rather the record demonstrates that the trial court made credibility findings which permitted it to conclude, in

---

[15] See: Exhibit 15 to the answer at p.9 which is the March 22, 2004 Opinion of the trial court.

[16] See: Exhibit 19 to the answer at pp.3-4. We do note that the recitation that the petitioner had taken his medication 15 hours prior to his interview is not supported by the suppression hearing record where Cotton testified that he had taken his medication 15 minutes before the police arrived.

9

accordance with Supreme Court case law, that the petitioner's statement was voluntarily, knowingly and intelligently entered. For this reason, these claims do not provide a basis for relief.

Thus of the issues which the petitioner seeks to raise here, his first two did not result in an improper application of federal law as interpreted by the United States Supreme Court and his last three issues were procedurally defaulted. For these reasons, the petition here is subject to dismissal.

Accordingly, it is recommended that the petition of Rakish Cotton for a writ of habeas corpus be dismissed, and because no reasonable jurists could concluded that a basis for appeal exists, that a certificate of appealability be denied.

Within the time limits set forth in the attached notice of electronic filing, any party may serve and file written objections to the Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

|  | Respectfully submitted, |
|---|---|
| Entered: November 10, 2008 | s/Robert C. Mitchell,<br>United States Magistrate Judge |